**Betty J. TURNER, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary, Dept. of Health, Education, and Welfare, Social Security Administration, United States of America, Defendants.**

**Civ. A. No. 4334.**

United States District Court
W. D. South Carolina,
Spartanburg Division.

July 20, 1965.

Theodore M. Burns, Jr., Greenville, S. C., for plaintiff.

John C. Williams, U. S. Dist. Atty., Greenville, S. C., for defendants.

SIMONS, District Judge.

This matter is before the court pursuant to Section 205[g] of the Social Security Act, as amended, to review the final decision by the Secretary of Health, Education and Welfare denying plaintiff a period of disability and disability benefits under Sections 216[i] and 223 of the Act.

Plaintiff alleges that she became disabled in March 1954, due to arthritis in her knees, hands, ankle and shoulder. She last met the special earnings requirements on June 30, 1954. The medical evidence in the record reflects that plaintiff is now disabled and has been disabled within the meaning of the Act for a number of years. The Secretary determined that plaintiff had failed to present necessary medical evidence to support her claim that she became disabled prior to June 30, 1954, while she still met the special earnings requirement.

Plaintiff was born August 26, 1923, is married, has two children and completed high school. Her only employment was in various mills where she worked primarily as a winder machine operator, which required considerable walking, stretching and reaching overhead. She worked from 1942 until 1951, when her job was eliminated in the mills. She testified that she was offered another job in 1952, but was physically unable to return to work.

In April, 1952, claimant was hospitalized for pain and swelling of the right knee, and was discharged with final diagnosis of injured cartilage. She underwent an operation in May 1952, to repair the damaged knee. Dr. Lowell H. Coleman who performed the knee surgery stated in his report, dated November 14, 1962, that at the time of the operation "the articular surfaces of the right knee joint had lost their glistening, smooth surfaces and had a dull frosty appearance suggestive of chronic inflammation." Plaintiff also complained in July 1952 that the left knee was painful. She testified at the hearing that she used crutches following the May 1952 operation until late October or November of that year, and that she still uses them early in the mornings. Claimant who is 5' 6½" tall formerly weighed 184 pounds, but lost 50 pounds in March 1954. In May 1955, plaintiff was again hospitalized with a diagnosis of arthritis of the knees. She testified that she continually experienced

pain in her knees following the operation in 1952, that arthritis struck her hands and arms as well as knees in March 1954. She further testified that she failed to seek medical attention from March 1954, until March 1955, because her husband was not working and she had no money with which to pay doctors' bills.

Dr. Charles B. Hanna, who saw claimant in May 1955, makes the following observation in his report dated July 31, 1961:

"In one record an x-ray was taken on the 17th of May 1955 which reads as follows: 'Examination of knees reveals narrowing of the lateral half of each knee joint space and slight lateral displacement of proximal end of each tibia and in relation to the distal end of each femur. There are also beginning arthritic deformities of adjacent ends of femora and tibiae. All of the visualized bones show some porosis.'"

Dr. Frank H. Stelling, a Diplomate of the American Board of Orthopedic Surgery, reviewed the file in this case in November 1962 at the request of the Secretary; and in answer to direct questions he stated that the general course of rheumatoid arthritis tends to be progressive, that claimant is still in an active phase of the disease; that she apparently was having symptoms of rheumatoid arthritis prior to the 1952 operation on her knee, and that some of the episodes of her hospitalization were caused by incipient stages of the arthritis. He could not say, however, that her medical record shows that she was disabled prior to 1960. He further stated in answer to direct question that additional inquiries should be made of Drs. Hanna and Hastings, who treated claimant in 1955, as to claimant's disability prior to 1960.

In response to Dr. Stelling's statement, Dr. W. D. Hastings was asked to assess claimant's condition prior to June 30, 1954, and in his report dated December 27, 1962, he states in part as follows:

"I first saw Mrs. Betty J. Turner on March 11, 1955 with pain in the left temporal mandibula joint and pain all up and down the left lower leg which I thought at that time was due to phlebitis. She subsequently in the next month or two developed pain in the left ankle, pain in both knees with free fluid in the knee as of May, 1955.

"Since this is all subsequent to 1954, I can only make this statement, that at the time I saw this lady in the first part of 1955, she could be described as having very severe rheumatoid arthritis. It would only be natural to suppose that since her symptomatology had been going on for several years, that it had been more or less severe less than a year ago, in June of 1954.

"According to this lady's accepted history which she gave me at the time and which has subsequently not varied, she saw Dr. Coleman from 1952 when her knee was operated upon for pain and swelling until 1953, and although the pain and swelling continued after this, she did not see any doctors until it finally became so bad and her trouble became so severe that she saw us in 1955.

"I was, and am convinced that this patient had a severe type of rheumatoid arthritis from 1953 at least, and feel sure that rheumatoid arthritis was present even before Dr. Coleman operated upon her knee."

The medical testimony in the record shows claimant has suffered from rheumatoid arthritis prior to 1952 in varying degrees in her knees, ankles, hands and fingers; and that the disease has become progressively worse. Drs. Hastings and Hanna, who treated her for this disease in 1955, are best qualified to assess her condition a year earlier while she was still covered under the Act. Their reports convincingly support claimant's assertion that she was disabled by the disease prior to June 30, 1954, and that she was unable at that time to engage in substantial gainful employment.

I find from a review of the record as a whole that the Secretary is not supported by substantial evidence in his determination that claimant has failed to prove that she became disabled prior to June 30, 1954.

It is therefore ordered that the decision of the Secretary be and it hereby is reversed.

Let judgment be entered accordingly.